IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

| | |
|---|---|
| DWIGHT K. HAZELWOOD, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    CIVIL ACTION NO. 1:08-00279 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case was referred to the undersigned United States Magistrate Judge by Standing Order filed April 28, 2008, to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 4.) Presently pending before the Court are the parties cross-Motions for Judgment on the Pleadings. (Document Nos. 10 and 11.)

The Plaintiff, Dwight K. Hazelwood (hereinafter referred to as "Claimant"), filed an application for DIB on March 23, 2006 (protective filing date), alleging disability as of October 1, 2004,[1] due to back problems; trouble with his right knee, hip, and left leg; a neck injury; high blood pressure; and high cholesterol. (Tr. at 16, 87, 98, 107.) The claim was denied initially and upon reconsideration. (Tr. at 58-60, 67-69.) On December 6, 2006, Claimant requested a hearing before

---

[1] At the administrative hearing on October 28, 2007, Claimant amended his alleged onset date from October 1, 2004, to April 3, 2005, to reflect the date he closed his business. (Tr. at 34.)

an Administrative Law Judge ("ALJ"). (Tr. at 70.) A hearing was held on October 28, 2007, before the Honorable Thomas Mancuso. (Tr. at 27-56.) On November 5, 2007, the ALJ issued a decision denying Claimant's claim for benefits. (Tr. at 16-26.) The ALJ's decision became the final decision of the Commissioner on March 24, 2008, when the Appeals Council denied Claimant's request for review. (Tr. at 2-5.) On April 28, 2008, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2007). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the

Commissioner, <u>McLain v. Schweiker</u>, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. § 404.1520(f) (2007). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we

> consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, April 3, 2005. (Tr. at 18, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from back disorders, which were severe impairments. (Tr. at 18-19, Finding No. 3) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or medically equal the level of severity of any listing in Appendix 1. (Tr. at 20, Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity for a wide range of light work, as follows:

> The claimant requires a sit/stand option to change positions as needed and should avoid hazards, such as unprotected heights and moving machinery. However, he can lift/carry twenty pounds occasionally and ten pounds frequently, can stand/walk about six hours in an eight hour workday, and can sit about six hours in an eight hour workday. No significant postural, manipulative, visual, communicative, or environmental limitations are found to exist.

(Tr. at 21, Finding No. 5.) At step four, the ALJ found that Claimant could not return to his past

relevant work. (Tr. at 24, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a parking garage attendant, counter clerk, and mail sorter, at the light level of exertion. (Tr. at 25 Finding No. 10.) On this basis, benefits were denied. (Tr. at 25, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

Claimant's Background

Claimant was born on December 16, 1953, and was 53 years old at the time of the administrative hearing, October 28, 2007. (Tr. at 24, 32, 87.) Claimant has a high school education and is able to communicate in English. (Tr. at 24, 32.) In the past, he worked as a construction carpenter and construction contractor. (Tr. at 24, 49, 99.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and will discuss it in relation to Claimant's arguments.

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in (1) finding that there are jobs in significant numbers that Claimant can perform and (2) failing to consider properly Claimant's pain and depression. (Document No. 10 at 3-9.) The Commissioner asserts that these arguments are without merit and that the ALJ's decision is supported by substantial evidence. (Document No. 11 at 7-11.)

1. <u>Step Five Analysis</u>.

Claimant first alleges that the ALJ did not meet his step five burden in identifying a significant number of jobs in the national economy that Claimant could perform given his vocational background and functional limitations. (Document No. 10 at 5-7.) Claimant notes the ALJ's findings that Claimant retained the residual functional capacity ("RFC") to perform a wide range of work at the light level of exertion with a sit/stand option to change positions as needed. (<u>Id.</u> at 5.) Given this RFC, the vocational expert identified the occupations of parking attendant, counter clerk, and non-governmental mail sorter, in response to the ALJ's hypothetical question. (<u>Id.</u> at 7.) Claimant asserts, however, that on cross-examination, the VE "admitted that these jobs would allow an individual the option to stand whenever he wanted but there were times during the workday when the employee would not have the option to sit." (<u>Id.</u>) Because the jobs identified by the VE and adopted by the ALJ did not allow Claimant an option to sit, Claimant contends that the "record does not contain any evidence that there are jobs in significant numbers in the national economy that a claimant who needed the option to sit could do." (<u>Id.</u>) Consequently, Claimant asserts that this matter must be

reversed and remanded for payment of benefits. (Id.)

The Commissioner asserts that contrary to Claimant's argument, the VE's testimony satisfies the ALJ's step five burden of production. (Document No. 11 at 8.) The Commissioner notes that though the VE testified that standing may be required at times, he also testified, at least regarding the parking garage attendant job, that the hypothetical person could perform the standing requirements of the job at his discretion. (Id.) "Although there are some tasks that can only be performed when standing, the fact that a worker can do these tasks, per the vocational expert, at his discretion, makes the job consistent with the ALJ's request for jobs that allow a person 'to sit from time to time at his option.'" (Id.) The VE did not retract his prior testimony or indicate that he made a mistake in his testimony. (Id.) Rather, he "simply acknowledged that there are times when a person needs to stand to perform a task." (Id.) Because the task that requires standing can be performed at the individual's discretion, the occupations identified by the VE are consistent with the ALJ's hypothetical question, and may be relied on by the ALJ to meet his burden at step five. (Id.) In the event that the Court disagrees with the Commissioner's position, the Commissioner asserts that further vocational expert testimony is warranted rather than an award of benefits. (Id. at 9.)

At the administrative hearing, the ALJ inquired of the VE what jobs an individual with Claimant's age, education, and work experience, who was limited to work at the light level of exertion with the need to sit from time to time at his option and who was afflicted with chronic pain in the moderate range but could be attentive to and could carry out assigned duties, could perform. (Tr. at 51.) The VE responded that such an individual could perform work as a parking garage attendant, counter clerk, and non-governmental mail sorter. (Id.) The VE clarified that the opportunity to change positions would be based on his experience in seeing people perform these

8

identified occupations. (Id. at 52.) On cross-examination, Claimant's counsel noted that standing was required at some point in doing the three identified jobs and inquired of the VE that when standing, the individual would not have the option to sit as required by the ALJ's hypothetical question. (Tr. at 53.) In response, the VE stated that regarding the parking garage attendant job, the individual would have to put cones out, which required standing, but that there was great latitude in terms of when the individual could sit/stand and that it was at the individual's discretion and not dictated by the demands of the job. (Id.) Regarding the non-governmental mail clerk, the VE testified that the job requires sorting mail throughout the day. (Tr. at 54.) Respecting the counter clerk job, the VE testified that there would be some occasions when the individual would need to stand, but that the individual could stand whenever he wanted. (Id.) The VE stated that the individual "could stand whenever [he] wanted to, there would be sometimes when [he] would have to stand, however." (Id.)

    The undersigned finds Claimant's argument on this point unavailing. Though the VE testified that the three jobs identified would require standing at some point, he also testified that the standing could be performed at the individual's discretion. (Tr. at 53-54.) Respecting the parking garage attendant job, the VE testified that the individual employee would be required to put out cones, which presumably, would be performed when standing, but that such activity could be performed at the employee's discretion. (Tr. at 53.) Regarding the non-governmental mail clerk job, the VE testified that the job required the employee to sort mail throughout the day, and did not address specifically whether this activity could be performed while sitting or standing. (Tr. at 54.) With respect to the counter clerk job, the VE again testified that there would be some occasions when the employee would have to stand, but that the time to stand was left to the employee's discretion. (Id.)

Thus, it is indisputable from the VE's testimony that the three jobs identified, require some amount of standing throughout the course of the employee's duties. However, it also is indisputable from the VE's testimony that the decision when to stand, and sit, is left to the individual employee, and is not dictated by the demands of the job. The ALJ specifically rejected a sit/stand option requiring Claimant to change positions every ten minutes because the evidence of record did not support such allegations. (Tr. at 25.) Despite Claimant's testimony that he could stand only five minutes, he testified that he walked to his friend's cabin to watch deer, took short walks in the woods, and took 15 to 20 eight to ten minutes walks each day. (Tr. at 22, 42, 44.) Thus, Claimant is able to stand and walk. The sit/stand option allows an individual to alternate sitting and standing throughout the course of performing the duties of employment. Because the jobs identified by the VE and adopted by the ALJ allowed for a sit/stand option at the individual employee's discretion, the undersigned finds that the ALJ met his burden at step five of the sequential analysis.

2. Pain and Credibility Assessment.

Claimant further alleges that the ALJ erred in not making the threshold finding of the pain and credibility assessment. (Document No. 10 at 8-10.) The Commissioner asserts that Claimant's argument is without merit because the ALJ found that Claimant had only one severe impairment, and therefore, did not need to make the threshold finding. (Document No. 11 at 9-11.)

A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2007); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain or symptoms and

the extent to which they affect a claimant's ability to work must be evaluated. Id. at 595. When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2007). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain

>or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2007).

>SSR 96-7p repeats the two-step regulatory provisions:

>>First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

>>Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

In view of error it found in the ALJ's pain analysis, the Craig Court remanded, stating its reasoning as follows:

> [T]he ALJ did not expressly consider the threshold question of whether Craig had demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain she alleges. Instead, the ALJ proceeded directly to considering the credibility of her subjective allegations of pain. . . . Accordingly, we remand to the ALJ to determine whether Craig has an objectively identifiable medical impairment that could reasonably cause the pain of which she complains. If the ALJ concludes that she does, then, and only, then, should it undertake an assessment into the credibility of Craig's subjective claims of pain.

Craig, 76 F.3d at 596. Relying upon this language in Craig, this Court remanded in Hill v. Commissioner of Social Security, 49 F.Supp.2d 865, 869 (S.D. W.Va. 1999) (Hallinan, J.), for consideration of the threshold issue in the pain analysis over the Commissioner's contention that it would be a waste of judicial and administrative resources because Mr. Hill would still be found not

disabled. Judge Hallinan stated as follows:

> For the Court to make a determination when reviewing whether the ALJ's decision is supported by substantial evidence, the Court expects those below to conduct a full and intensive review of the record. Justice and fairness demands nothing less. To say that the results would be the same upon a second, more comprehensive review and explanation of the record, and therefore should not be done at all, would be to deny the Claimant his right to a fair decision, and in addition, deny the Court of a fully developed record of review.

Hill, 49 F.Supp.2d at 870. In Arnold v. Barnhart, Civil Action No. 1:04-0422 (S.D. W.Va. Sept. 29, 2005), this Court further held that Craig mandates "that an ALJ must make an *explicit* determination that a claimant has or has not proven an underlying medical impairment that could cause the pain alleged by the claimant." Id. at 11.

> [T]he ALJ's failure to expressly reach a conclusion regarding the first part of the pain disability test, the threshold question of whether a claimant has "an underlying medical impairment that could reasonably be capable of causing the pain alleged," constitutes a failure to apply the correct legal standard in determining that a claimant is not disabled by pain.

Id. at 14. See also, Bradley v. Barnhart, 463 F.Supp.2d 577, 581-83 (S.D. W.Va. 2006) (remanding for the ALJ's failure to consider the threshold question of Craig prior to considering the credibility of her subjective allegations).

In the instant case, the ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 21-22.) The ALJ acknowledged Claimant's testimony and the medical evidence of record, and stated his findings regarding the pain and credibility assessment as follows:

> The alleged level of severity of symptoms and limitations are not fully supported by the evidence of record and do not rise to the level of disability under the Social Security Act and Regulations. Despite alleging disabling symptoms, including pain, treatment has been limited and conservative overall.

(Tr. at 22.) Without explicitly addressing the first prong of the two-step pain and credibility analysis

14

discussed above, the ALJ proceeded to note under step two that the evidence of record demonstrated that Claimant received only limited and conservative treatment. (Id.) The ALJ proceeded to discuss the treatment notes from Dr. Weaver and the different modalities of treatment. (Tr. at 22-23.) He further discussed Claimant's medications, testimony, and reported activities. (Tr. at 23.) Consequently, the ALJ concluded that Claimant's "activities suggest a greater level of functioning than alleged and demonstrate the capacity to perform a wide range of work at least at the light level of exertion." (Tr. at 23.) The ALJ, however, failed to determine at step one of the pain and credibility analysis whether Claimant had any underlying impairments which reasonably could be expected to produce the pain or symptoms alleged.

The Commissioner asserts that the ALJ found that Claimant had only one severe impairment, a back impairment. (Document No. 11 at 10.) Consequently, the ALJ's failure to "make an explicit threshold finding is harmless under the facts of this case because [Claimant's] only severe impairment involved his back disorder and there are no other impairments that the ALJ did not consider when determining the intensity and persisten[ce] of [Claimant's] pain and symptoms." (Id.) The Claimant asserts that despite the Commissioner's argument, the ALJ did not make such a specific finding in his decision, and therefore, the case must be remanded for proper findings of fact. (Document No. 12 at 2-3.)

The Court finds the Commissioner's argument unpersuasive; a finding of severe impairments at step two of the sequential analysis does not equate a finding of impairments that reasonably could be expected to cause subjective pain and symptoms at step one of the pain and credibility analysis. A finding of a severe impairment means that a claimant's impairment significantly limits his

"physical or mental ability to do basic work activities."[3] 20 C.F.R. §§ 404.1520(c); 416.920(c) (2007). This step two standard differs from that required under the threshold step defined by 20 C.F.R. § 404.1529(b), Craig, Arnold, and Bradley. Section 404.1529(b) defines the threshold standard in part, as follows: "Medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(b) (2007). As this Court stated in Bradley, "if it is determined that the claimant has demonstrated by objective medical evidence an impairment or impairments capable of causing the degree and type of pain he alleges, the supporting findings to that effect may shed some light on the credibility of his subjective claims of disabling pain." Bradley, 463 F.Supp.2d at 582.

Based upon the foregoing, the Court recommends that this matter be remanded for further administrative proceedings. The Court also notes that Claimant raises one other objections in his Motion, but the undersigned will not address that issue at this time due to the fact that the case should be remanded on other grounds.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the District Court confirm and accept the foregoing findings, **GRANT** Plaintiff's Motion for Judgment on the Pleadings (Document No. 10.), **DENY** the Commissioner's Motion for Judgment on the Pleadings (Document No. 11.), **REVERSE** the final decision of the Commissioner, **REMAND** this matter for

---

[3] Basic work activities are the abilities and aptitudes necessary to do most jobs, including: physical functions such as sitting and standing; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. *See* 20 C.F.R. §§ 404.1520(c); 404.1521(b)(1)-(6); 416.920(c); 416.921(b)(1)-(6) (2007).

further proceedings consistent with this Proposed Findings and Recommendation pursuant to the fourth sentence of 42 U.S.C. § 405(g), and **DISMISS** this matter from the Court's docket..

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

DATE: July 31, 2009.

R. Clarke VanDervort
United States Magistrate Judge